UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA CURRIE,

       Petitioner,                                  Case No. 11-cv-12461
                                                               HON. BERNARD A. FRIEDMAN

v.
MILLICENT WARREN,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This is a habeas action brought by a state prisoner under 28 U.S.C. §2254.  Petitioner Gloria Currie is confined by the Michigan Department of Corrections, currently housed at the Huron Valley Women's Complex in Ypsilanti, Michigan, where she is serving concurrent sentences of ten to fifteen years for two counts of first-degree child abuse.  Petitioner was convicted on January 25, 2008, following a bench trial in Macomb County Circuit Court.  She was sentenced on February 13, 2008.  The state appellate courts affirmed her convictions and sentences. *People v. Currie*, No. 284159, 2010 WL 1052087 (Mich. Ct. App. Mar. 23, 2010); *People v. Currie*, 487 Mich. 858 (2010) (Table).

On June 7, 2011, petitioner filed this habeas petition, challenging the constitutionality of her convictions on the basis that the evidence presented at trial was legally insufficient, the verdict was against the great weight of the evidence, her trial counsel was ineffective, and the trial court improperly scored her sentencing guidelines.  Respondent, through the Attorney General's Office, filed an answer arguing that the claims either lack merit or are not cognizable on federal habeas review.

The Court concludes that petitioner's convictions and sentences are constitutionally sound.  Therefore, the petition is denied and the Court will decline to issue a certificate of appealability.

I.

Petitioner's convictions arise from the injuries sustained by her eight-week old son, Davier Currie, while he resided at petitioner's home.  In rendering its decision, the Michigan Court of Appeals relied upon the following facts, which are presumed to be correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (same).

> Defendant was convicted of injuring her eight-week-old son in 2006.  In addition to the victim's twin brother, defendant has seven other children ranging in age from 2 to 14 years.  There have been neglect and abuse concerns with other children, and at the time of this incident, defendant's sister had custody of defendant's youngest daughter.

> On the morning of September 3, 2006, defendant took the victim to the hospital for emergency treatment.  After an extensive examination, the victim was found to be suffering from (1) a subdural hematoma near the front of his brain, (2) blood on the occipital part of his brain, (3) fractures of the back and side of his skull, (4) permanent blindness caused by severe brain injuries, (5) fractures of his right wrist, femur, tibia, clavicle, and fibula, (6) fractures of his left tibia, fibula, and clavicle, (7) six rib fractures on his right side, (8) a hip fracture, (9) severe anemia necessitating a blood transfusion, and (10) scratches on his nose and mouth.

> Defendant initially reported to hospital personal and an Eastpointe police officer that she accidentally sat on the victim's leg.  Subsequently, defendant altered her claim of how the victim was injured.  She stated that she "pulled and yanked" on the victim's arms, deprived him of food, "tugged on both his legs," and struck him in the back of the head with her palm.  Defendant explained that the victim cried uncontrollably, and that she became overwhelmed and frustrated.

> Dr. Dena Nazar, who was qualified as an expert in child abuse, testified that all of the victim's injures were "due to physical abuse."  Dr. Nazar explained that the injuries had been inflicted at different times throughout the victim's eight-

2

week life.  She indicated that many of the victim's fractures and brain injuries had gone untreated for weeks.  The victim's head injuries were "consistent with trauma or impact."  The subdural hematoma was consistent with an "impact or shaking injury," while the skull fractures were consistent with "direct impact or direct force."  Dr. Nazar characterized the victim's wrist injury as an "angulation" fracture typically caused by "tugging and twisting upwards toward the palm of the hand."  The tibia and fibula fractures were the result of "forceful tugging."  Dr. Nazar explained that the femur is "the strongest bone in the body," and that the fracture was the "direct result" of a "forceful blow" to the bone itself.  She explained that the femur and clavicle fractures were new and that both were the type that typically result from "direct force or a direct blow."  Dr. Nazar opined that the victim's rib fractures were caused by "direct squeezing."

Raquel Dean and Danielle Manigault, two of defendant's sisters, both testified for the prosecution that defendant is a poor parent who should not care for children.  With regard to the victim, Dean testified that defendant openly expressed her dislike for him because "he looks like his father," and that defendant would "totally ignore" him.  Dean observed that, shortly before defendant took the victim to the hospital, the victim looked "like he was dying," because he was "so skinny" and "his face was sunk in, he had no hair, and had deep scratches around his nose."  Dean applied Vaseline to the victim's scratches, but when she attempted to change his diaper, defendant called her "nosey" and told her "to leave him alone."  Defendant did not allow Dean to take the victim home with her, and made her leave.  Upon leaving, Dean immediately called Manigault, another sister, and their father, and told them that the victim would die if he did not get assistance.

A couple of days later, defendant called Manigault and told her that the victim's leg was broken and his hip was "displaced."  Manigault, who had custody of defendant's youngest daughter because of abuse concerns, told defendant to take the victim to the hospital.  Dean and Manigault testified that defendant was concerned about what "Social Services" would do to her.  Eventually, Manigault threatened to call the police if defendant did not take the victim to the hospital. Manigault testified that when she later saw the victim at the hospital, "he was in a deplorable state" with "scratches all over his face, and all the way down to his chest," and he was in a body cast.  Manigault testified that currently the victim's "skull is flat," he is legally blind, he does not speak, crawl, or walk, and he has to be taken to several specialists each month.

At trial, the defense argued that defendant was insane when she inflicted the victim's injuries, because she suffered from postpartum depression.  Defendant presented an independent psychologist, who testified that defendant was mentally ill because she was suffering from postpartum depression.

3

*Currie*, 2010 WL 1052087, at \*1-2 (footnotes omitted).

After petitioner was charged, she pleaded guilty, believing that her minimum sentence would be twelve to twenty-nine months. But when the probation department's recommendation came back with higher sentences, petitioner's first court-appointed attorney requested time to discuss the case with her. Eventually the state trial court appointed new defense counsel and the prosecution offered to dismiss one of the counts and recommend a minimum sentence of three to five years. Petitioner withdrew her plea and elected to proceed with a bench trial.

After a two-day proceeding, the trial court rejected petitioner's insanity defense and found her guilty as charged. Following her convictions and sentencing, petitioner filed a combined motion for a new trial, judgment of acquittal and re-sentencing. The trial court denied the motion but granted her a hearing on the issue of ineffective assistance of counsel. At the hearing both defense counsel and petitioner testified and the trial court took the matter under advisement. Thereafter, the trial court issued a written opinion denying the motion. *People v. Currie*, No. 2006-4764-FH (Macomb Cnty. Cir. Ct. Apr. 3, 2009).

Petitioner then filed a direct appeal with the Michigan Court of Appeals, raising the same claims raised in this habeas petition. The Court of Appeals affirmed her convictions and sentence. *Currie*, 2010 WL 1052087, at \*1, 10. Her application for leave to appeal that decision, filed with the Michigan Supreme Court, was later denied on July 26, 2010. *Currie*, 487 Mich. 858 (2010). Petitioner neither filed a petition for a writ of certiorari with the United States Supreme Court nor a motion for relief from judgment with the state trial court. Instead, petitioner commenced the instant habeas action.

II.

4

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. §2241 *et seq.*, governs this case because petitioner filed her petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"A State court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see Bell v. Cone,* 535 U.S. 685, 694 (2002) (same).

"[T]he 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams,* 529 U.S. at 413); *see Bell,* 535 U.S. at 694 (same).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect

or erroneous.  The state court's application must have been 'objectively unreasonable.'"
*Wiggins,* 539 U.S. at 520-521 (citations omitted); *see also Williams,* 529 U.S. at 409 (same).
The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and
'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett,* 559 U.S.
---, ---, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh,* 521 U.S. at 333 n.7).

The United States Supreme Court has held that "a state court's determination that a claim
lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. ---, ---, 131 S.Ct. 770,
786, 178 L.Ed.2d 624 (2011) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).  The
Supreme Court emphasized "that even a strong case for relief does not mean the state court's
contrary conclusion was unreasonable." *Harrington*, 562 U.S. at ---, 131 S.Ct. at 786 (citing
*Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Pursuant to §2254(d), "a habeas court must
determine what arguments or theories supported or. . . could have supported, the state court's
decision; and then it must ask whether it is possible fairminded jurists could disagree that those
arguments or theories are inconsistent with the holding in a prior decision" of the Supreme
Court. *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that
the state court's rejection of his claim "was so lacking in justification that there was an error well
understood and comprehended in existing law beyond any possibility for fairminded
disagreement." *Id.* at 786-787.

The scope of a federal habeas court's review is limited to whether the state court's
decision comports with clearly established federal law as determined by the Supreme Court at
the time the state court renders its decision. *See Williams,* 529 U.S. at 412; *see Knowles v.*

6

*Mirzayance,* 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court"). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington,* 562 U.S. at ---, 131 S.Ct. at 785. Nor does the statute "require citation of [Supreme Court] cases--indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original); *see Mitchell,* 540 U.S. at 16 (same).

Pursuant to the foregoing standards, the Court proceeds to address petitioner's claims.

III.

A.

Petitioner first asserts that she is entitled to habeas relief because there was insufficient evidence to establish that she intended to cause serious physical harm to her child or knew that serious physical harm would be caused by her acts.

The due process clause of the United States Constitution "protects against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." *In re Winship,* 397 U.S. 358, 364 (1970); U.S. Const. Amend. XIV. The standard of review for a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original and citation omitted). "The *Jackson*

standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Id.* at 324 n.16 (citations omitted).

A federal habeas court must view this standard through the framework of 28 U.S.C. §2254(d). *Martin v. Mitchell,* 280 F.3d 594, 617 (6th Cir. 2002) (citation omitted). Hence, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups" who might view facts differently than a reviewing habeas court. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003) (same).

"[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown,* 558 U.S. 120, ---, 130 S.Ct. 665, 673 (2010) (citations omitted). Accordingly, "[t]he mere existence of sufficient evidence to convict [] defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-789. Courts do not need to be convinced that a petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995). In fact, the AEDPA prevents petitioners, and federal courts, from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts. *Renico,* 559 U.S. at ---, 130 S.Ct. at 1866.

In Michigan, "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Mich.

8

Comp. Laws § 750.136(b).  With regard to intent, the prosecution is required to show that the

defendant intended to commit the charged act, and that he or she intended to cause serious

physical or mental harm to the child or knew that such harm would result. *People v. Maynor,* 470

Mich. 289, 295 (2004).

In this case, the Michigan Court of Appeals, not specifically citing *Jackson* but

nevertheless applying that standard, addressed and denied this claim, stating:

> Viewed in a light most favorable to the prosecution, a rational trier of fact
> could have found the required intent for first-degree child abuse.  Evidence was
> presented that the small, eight-week-old victim suffered severe brain injuries, a
> subdural hematoma, skull fractures, and severe anemia.  He had multiple fractures
> throughout his body, including his ribs, hip, wrist, femur, tibias, and clavicles,
> and had extremely deep scratches on his nose and mouth.  A medical expert
> testified that there was no innocent explanation for the victim's severe injuries.
> Rather, the victim's injuries were consistent with being shaken, receiving direct
> forceful impacts, being forcefully squeezed, and having certain extremities
> forcefully tugged.  There was no dispute that the victim was in defendant's care
> when he was severely injured.  The testimony showed that defendant expressed
> dislike for the victim because he looked like his father, while his twin brother did
> not.  The evidence that the victim's twin brother suffered no injuries substantiates
> defendant's intent to injure the victim.  In addition, the injuries were inflicted at
> different times throughout the victim's eight-week life.  Defendant rejected
> assistance in caring for the victim from a family member, and did not immediately
> take him to a hospital.  In fact, the testimony showed that defendant did not want
> to take the child to the hospital because she was afraid of being reported to child
> protective services, and only took him after a family member threatened to call
> the police.  This evidence, viewed in a light most favorable to the prosecution,
> was sufficient to enable a rational trier of fact to conclude beyond a reasonable
> doubt that defendant intended to seriously harm the eight-week-old victim or
> knew that her acts would cause serious harm.

> Although defendant argues that she is not criminally responsible because
> she was legally insane, the evidence supports the trial court's rejection of an
> insanity defense.  An expert from the Center for Forensic Psychiatry evaluated
> defendant and opined that she was not mentally ill at the time she inflicted the
> victim's injuries.  The expert testified that defendant has "a lot of psychological
> and emotional and behavioral problems," but "they did not meet the statute
> criteria for mental illness" and "were much more consistent with a character
> disorder."  Further, on cross-examination, the defense expert acknowledged that

9

the insanity statute was not completely satisfied here because defendant understood the wrongfulness of her actions.  Also, defendant's sisters testified that defendant never exhibited any signs of mental illness.  We conclude that the evidence was sufficient to sustain defendant's convictions of first-degree child abuse.

*Currie*, 2010 WL 1052087, at *3 (footnote omitted).

The state appellate court's decision is neither contrary to nor an unreasonable application of the *Jackson* standard.  When viewed in the light most favorable to the prosecution, a rational trier of fact could have concluded that there was sufficient evidence to convict petitioner of child abuse in the first-degree.  Petitioner's attacks on the credibility of the prosecution's witnesses, as well as her arguments that her expert witness was credible, are unavailing.  Under *Jackson*, the Court will not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgement for that of the trier of fact, in this case the state trial judge. *Coleman v. Johnson,* ---U.S.---, ---, 132 S.Ct. 2060, 2062 (2012); *see also Cavazos v. Smith,* 565 U.S. 1, 132 S.Ct. 2, 4 (2011) (same).  Petitioner's attacks on her own sisters' testimony is unsupported by the record because both sisters testified that they still loved her despite her abuse of Davier.

Likewise, her argument that Davier's physical condition was congenital is unreasonable and unsubstantiated.  The prosecution's expert, Dr. Richard Rickman, testified that Davier's injuries were the result of trauma and there was no physical condition that could have caused such injuries.  Dr. Rickman examined petitioner with respect to her competency.  At trial, he testified that petitioner told him that she did not want to feed Davier and that when Davier had "his tantrum," it "got under [her] skin and made [her] feel like hurting him." Trial Tr. vol. III, 25 Jan. 25, 2008, ECF No. 9-13.  Petitioner also said that she recognized that the force she applied to his body was breaking his bones.

Detective Steven Sellers testimony confirmed Dr. Rickman's statements.  He spoke with petitioner at the hospital, where she admitted to tugging on Davier's wrists and legs and hitting him in the back of the head.  Furthermore, Dr. Nazer, the pediatrician who reviewed Davier's records, testified that his injuries resulted from child abuse, and the result of direct strikes, shaking, or forceful squeezing, twisting, or tugging.  Petitioner's sisters corroborated these physical signs of abuse as they observed deep scratches on Davier's nose, mouth, and chest.

Consequently, when viewed in the light most favorable to the prosecution, a rational trier of fact, could have concluded that there was sufficient evidence to prove that petitioner knowingly and intentionally caused Davier's injuries and convict her of child abuse in the first-degree.  Therefore, habeas relief is not warranted with respect to this claim.

## B.

Next, petitioner claims that she is entitled to habeas relief because the verdict was against the weight of the evidence.  It is well-settled that a federal court has no power to grant habeas relief on the ground that a state conviction is against the weight of the evidence. *See Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) (federal courts have "no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence"); *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003) (same).  Rather, federal-habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

11

Petitioner's claim that the trial court improperly denied her a new trial because the verdict was against the "great weight" of the evidence is a state-law claim.  It does not rise to the level of constitutional import unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj*, 305 F. Supp. 2d at 796.  Because there was sufficient evidence to sustain petitioner's conviction, the fact that the verdict may have gone against the weight of the evidence is of no consequence in the realm of habeas review.

## C.

Petitioner next asserts that she is entitled to habeas relief because her counsel was ineffective.  Petitioner details several instances where trial counsel was deficient; namely, counsel failed to adequately consult with her, refused to allow her to testify, failed to adequately prepare for trial, failed to show her the presentence report and review it with her and failed to object to the presentence report at sentencing.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial.  *Id.*

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  The Court's scrutiny of counsel's performance is viewed through a highly deferential lense. *Id.* at 689.

12

Counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment. *Id.* at 690.  And it is the petitioner

who bears the burden of overcoming the presumption that counsel's actions constituted sound

trial strategy. *Id*. at 689.

 To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is one that is

sufficient to undermine confidence in the outcome. *Id.*  "On balance, the benchmark for judging

any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the [proceeding] cannot be relied on as having

produced a just result." *Id.* at 686.

 The Supreme Court has confirmed that a federal court's consideration of ineffective-

assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas

review.  This is because of the deference accorded to trial attorneys and the state appellate courts

that review their performance.  "The standards created by *Strickland* and §2254(d) are both

'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562

U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted).  "When §2254(d) applies, the

question is not whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

1.

 Petitioner first claims that counsel was ineffective because he did not adequately consult

with her.  At the *Ginther*[1] hearing held on March 17, 2009, both petitioner and her trial counsel testified regarding their meetings over the course of the representation.  Counsel testified that he met with petitioner at the Macomb County jail on August 17, October 11, and November 26, 2007, for two or three hours.  He also stated that he repeatedly met with her at the courthouse.  He attested that he fully explained the charges leveled against her, explained her right to trial and all potential defenses.  He also talked with her about witnesses, explored the possibility of an insanity defense, spoke with doctors and reviewed her medical records.  He advised petitioner to take the plea offer because he believed its terms to be favorable and prepared for trial after she rejected it.

Because petitioner suffered from anger issues, counsel said that he advised her not to testify and she agreed.  Counsel further testified that he reviewed petitioner's presentence report with her.  During sentencing, counsel informed the court:

> I spoke to Miss Currie about [the presentence report], it appears to be accurate and correct. * * *  I did have the opportunity to review the report with Miss Currie as to those allegations in the report that were there prior, everything appears correct.  There are no additions, deletions or corrections we would want to make in the report.

Sentencing Hr'g Tr. 3-4 Feb. 13, 2008, ECF No. 9-14.

On the other hand, petitioner testified that counsel visited her only twice when she was in jail, not three times.  He simply introduced himself because he had not yet received discovery from her first attorney.  Counsel spent about twenty minutes with her.  The second time, he stayed for less than ten minutes.  She testified that he yelled at her when she gave him her witness list and didn't even look at it.  Petitioner wanted her parents, oldest daughter, and second

---

[1]*People v. Ginther*, 390 Mich. 436 (1973).

14

oldest son to testify about how sick she was.  She claimed to be depressed, crying everyday and emotional.  She claimed that her youngest daughter's birth records would show that she was told by a registered nurse that she was showing signs of postpartum depression.  She said she wanted to testify, but she listened to her attorney and did not do so.  Petitioner further testified that the first time she saw her presentence report was when she got to prison.

Although petitioner's version of her meetings with counsel significantly contrasts with his testimony concerning the same, the Court finds that counsel's version is supported by the record and, given the overwhelming evidence against petitioner, she cannot establish that she was prejudiced by any alleged failure of her attorney to consult with her.

Against this backdrop, it becomes apparent that the state appellate court did not unreasonably apply *Strickland* when it determined that petitioner failed to establish counsel's deficient performance.  Counsel consulted with her on important decisions, including the plea bargain, whether to testify, identify relevant witnesses, and whether to pursue the insanity defense at trial.  The Court of Appeals' ruling was not contrary to, or an unreasonable application of, *Strickland*, and petitioner failed to demonstrate through clear and convincing evidence that the decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. §2254(d); *see Parker v. Matthews*, --- U.S. ---, ---, 132 S.Ct. 2148, 2151 (2012) (same) (citation omitted).

## 2.

Petitioner claims that counsel was ineffective because he refused to allow her to testify in her own defense at trial.

A criminal defendant has a constitutional right to testify in her own defense or to refuse

to do so. *Rock v. Arkansas*, 483 U.S. 44, 53 (1987).  "The right to testify is personal to the

defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the

right must be knowing and intentional." *United States v. Webber,* 208 F.3d 545, 550-551 (6th

Cir. 2000).  The role of counsel is to advise the defendant whether he or she should take the

stand but the final decision is ultimately up to the defendant. *Id.* at 551.  "[I]f the defendant

wants to testify, he [or she] can reject his attorney's tactical decision by insisting on testifying,

speaking to the court, or discharging his lawyer." *Id.*  Waiver of the right to testify may be

presumed when a defendant fails to alert the trial court of her disagreement with counsel's

advice. *Id*.

        At the *Ginther* hearing, counsel testified that he explained to petitioner that she had a

constitutional right to testify on her own behalf.  Nonetheless, he advised her to remain silent

because he believed she was a "loose cannon" and her "anger issues" could be damaging to her

case. *Ginther* Hr'g Tr. 13-14 Mar. 17, 2009, ECF No. 9-15.  Counsel also testified that petitioner

never indicated to him that she wanted to testify. *Id.* at 28.  Petitioner claimed that she told her

attorney that she wanted to testify but admitted that she never said anything to the trial judge.

Petitioner disavowed any knowledge of her constitutional rights, but stated that she would have

exercised her right to testify had counsel properly informed her. *Id.* at 41-42.

        In addressing this claim, the Michigan Court of Appeals found the issue to be one of

credibility between petitioner and her trial counsel.  The Court held that petitioner failed to

demonstrate that trial counsel neglected to inform her of her constitutional right to testify or

unreasonably prevented her from doing so.  The court also ruled that petitioner failed to establish

that the outcome of her case would have been any different had she testified.  Thus, habeas relief

16

is denied with respect to this aspect of her claim.

3.

Petitioner contends that trial counsel was ineffective for failing to adequately prepare for trial, specifically she argues that counsel was ineffective for failing to call her father, mother, oldest daughter, and second oldest son as witnesses.  She also suggests that counsel was ineffective because he chose tp present an insanity defense.

Federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that an investigation is unnecessary. *See Wiggins,* 539 U.S. at 522-523; *Strickland,* 466 U.S. at 691; *Stewart v. Wolfenbarger*, 468 F.3d. 338, 356 (6th Cir. 2006).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (citations omitted).  "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his options and make a reasonable choice between them.'" *Id.* (citations omitted). Inattention or negligence, instead of sound strategic judgment, is inexcusable. *Wiggins,* 539 U.S. at 526; *Sims v. Livesay,* 970 F.2d 1575, 1580-1581 (6th Cir. 1992).

The Michigan Court of Appeals denied relief on this claim, explaining:

> At the hearing, defendant testified that trial counsel did not consider that she wanted to call her parents and two older children, who would have testified that she had appropriately "take[n] care of them, and how sick they seen [sic] their mother."  Trial counsel testified that in preparation for trial, he met with several family members suggested by defendant.  He explained that he did not call any of them because "they were not sympathetic to Ms. Currie at all regarding this case." He further explained that defendant's father "seemed to vacillate between being sympathetic to her and being antagonistic toward her," so he was unsure of how he would testify.  After learning that there were no supportive family members, counsel "developed a possible insanity defense."  He believed it was a viable

17

defense based on defendant's actions of inflicting the injuries, "what he was seeing, especially in [his] meetings with her," and their expert witness. In establishing the insanity defense, trial counsel read the police reports, read through "thousands" of medical records, spoke with doctors and defendant's "neglect" attorney, and discussed strategies with defendant's first appointed trial attorney.

The record supports trial counsel's testimony that he was prepared for trial, that he vigorously presented the defense of insanity, and that defendant's family members did not support her. Under the circumstances, we conclude that trial counsel's decision to pursue an insanity defense, and to not present the vacillating or potentially damaging testimony of certain family members, was not below an objective standard of reasonableness and fell squarely within the confines of appropriate trial strategy. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." Moreover, the evidence in this case was compelling, and defendant has failed to demonstrate that there is a reasonable probability that, but for counsel's failure to call defendant's parents and two older children, the result of the proceedings would have been different.

*Currie*, 2010 WL 1052087, at *6 (citation omitted).

Again, the state appellate court's decision is neither contrary to nor an unreasonable application of *Strickland*. Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000); *see Wiggins,* 539 U.S. at 522-523 (same). The failure to call witnesses or present other evidence constitutes ineffective assistance only when it deprives a defendant of a material defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

Petitioner has not shown that counsel was ineffective or that she was deprived of a material defense. Trial counsel made a strategic decision not to call petitioner's parents or older children as witnesses after a reasonable investigation suggested that they were not always sympathetic to her case, i.e., petitioner's mother testified against her in the neglect proceedings

18

terminating her parental rights. *See In re Currie*, No. 279527, 2008 WL 509560 (Mich. Ct. App. Feb. 26, 2008).

Upon making that determination, counsel chose to pursue an insanity defense. Counsel testified that he attempted an insanity defense after researching the law and consulting with an expert. The fact that the defense failed is not enough to render counsel's strategic choice ineffective, *see Strickland,* 466 U.S. at 689, and petitioner is not entitled to habeas relief on this claim.

4.

Petitioner further asserts that her trial counsel was ineffective for failing to show her the pre-sentence report. As already noted, trial counsel testified that he showed petitioner her presentence report before sentencing. During sentencing, trial counsel told the court that he went over the presentence report with petitioner and that she did not want to make any corrections or deletions. Petitioner, however, testified that she never saw her presentence report until she got to prison. The Michigan Court of Appeals rejected this claim, finding that the record supported trial counsel's version of the facts. Counsel did in fact show petitioner her presentence report and discussed it with her in jail. Consequently, petitioner is unable to show that counsel was ineffective under the *Strickland* standard.

5.

In her final ineffective-assistance-of-counsel claim, petitioner maintains that counsel failed to object to eight separate statements in her presentence-information report.

Petitioner first argues that trial counsel should have objected to the report's assertion that she was financially supported by her parents. Respondent contends that the pre-sentence report

19

accurately reflected that petitioner was supported by her father and various forms of state aide.
After a careful review of the record, this court has been unable to find either assertion in the
presentence report.

Petitioner argues that counsel was ineffective because he failed to object to Dr.
Rickman's conclusion that she did not suffer from postpartum depression.  At trial, Dr. Rickman
testified that, based on his interview with petitioner, he did not believe she suffered from
postpartum depression. While petitioner and trial counsel did not agree with Dr. Rickman's
assessment, the presentence report accurately reflected his testimony from trial and any objection
on this ground would have been futile. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir.
2010).

Petitioner alleges that trial counsel was ineffective because he did not object to her
family's claims that she abused or neglected her children.  However, the record confirms that
petitioner's sisters and mother cared for her children at various points due to their concerns that
petitioner was neglecting her children and not sending them to school.  In any event, the
presentence report contained claims of neglect and abuse that were elicited during trial.  Thus,
any objection by trial counsel would have similarly been futile. *Smith*, 591 F.3d at 523.

Petitioner also takes issue with counsel's failure to object to the victim's impact
statement section of her presentence report.  Several doctors testified at trial as to the medical
condition of the victim.  Statements regarding the financial support provided to the petitioner by
her family were also corroborated through testimony at trial.  Petitioner also failed to
demonstrate that the letters referred to in the victim's impact statement contained false or
misleading information.

20

To the extent petitioner claims that trial counsel failed to object to the section of the presentence report containing her own description of the offense, there was no reason for trial counsel to object to petitioner's description of the offense because it accurately reflected her position.

Finally, petitioner argues that trial counsel should have objected to a quote from Dr. Rickman's report, which allegedly misquoted her.  Petitioner believes the presentence report should have been amended to reflect that her statement, "I knew I was breaking his bones," was actually "I didn't know his bones were broken."  Yet, since the presentence report accurately reflects Dr. Rickman's testimony from trial, Trial Tr. vol. I, 24-25 Jan. 24, 2008, ECF No. 9-12, any objection to this portion of the presentence report would have been futile and the state appellate court properly denied relief on this claim.

### D.

With respect to the duration of her sentence, petitioner asserts that she is entitled to habeas relief because the state trial court improperly scored her offense variables and exceeded the state sentencing guidelines without substantial and compelling reasons.  As a preliminary matter, the Court recognizes that petitioner's sentence is within the statutory maximum of life imprisonment. *See* Mich. Comp. Laws §750.136b(2).  A sentence within the statutory limit is generally not subject to federal habeas review. *See Townsend v. Burke,* 334 U.S. 736, 741 (1948).

Moreover, claims which arise out of a state court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741,

21

745 (E.D. Mich. 2001). Petitioner has made no such showing. Her sentences are within the

statutory maximums set by state law.

Petitioner's claim that the trial court improperly scored the state sentencing guidelines or

imposed a sentence above the recommended guidelines range is, likewise, without merit. Any

challenge to the trial court's upward departure from the sentencing guidelines is not cognizable

on federal habeas review because it is a state-law-claim. *See Howard v. White,* 76 F. App'x 52,

53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing and crediting

statutes is a matter of state concern only."). To the extent petitioner argues that Michigan's

sentencing scheme violates *Blakely v. Washington*, 542 U.S. 296 (2004), her claim lacks merit.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt." In *Blakely*, the Supreme Court explained that

"the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose

*solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."

*Blakely*, 542 U.S. at 303 (emphasis in original). The Sixth Circuit has held that Michigan's

sentencing guidelines, which do not involve an intermediate sanction rule, do not violate the

Sixth Amendment because they set a minimum sentence range while the maximum is set by

statute. *Montes v. Trombley*, 599 F.3d 490, 494-498 (6th Cir. 2010); *Chontos v. Berghuis*, 585

F.3d 1000 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 3413 (2010). Here, petitioner's sentences did

not fall within an intermediate sanction rule and habeas relief is not warranted with respect to

this claim.

IV.

22

Currie v. Warren (11-12461)

For the reasons stated, the Court concludes that petitioner is not entitled to habeas relief on any of the claims contained in her petition.  Accordingly, the Court denies, with prejudice, the petition for a writ of habeas corpus.

In the event petitioner appeals the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. §2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability is warranted only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).  A court may not conduct a full merits review but must limit its examination to a threshold inquiry of the underlying merits. *Id.* at 336-337.

Having considered the matter, the Court believes that petitioner has not made a substantial showing of the denial of a constitutional right and that reasonable jurists could not debate the correctness of the Court's determination.  Therefore, the Court declines to issue a certificate of appealability. *See* Fed. R. App. P. 24(a).


IT IS SO ORDERED.

23

Currie v. Warren (11-12461)

Dated: January 25, 2013                s/ Bernard A. Friedman
                                       BERNARD A. FRIEDMAN
                                       SENIOR UNITED STATES DISTRICT JUDGE